IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

WILTRUD WILLIAMS,                )
                                 )
            Plaintiff,           )
                                 )
       v.                        )        CIVIL ACTION NO. 2:06cv1023-CSC
                                 )
COMMISSIONER OF                  )
SOCIAL SECURITY,                 )
                                 )
            Defendant.           )

**MEMORANDUM OPINION**

**I.  Introduction**

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social

Security Act,  42 U.S.C. §§ 401 et seq., alleging that she was unable to work because of a

disability.  Her application was denied at the initial administrative level.  The plaintiff then

requested and received a hearing before an Administrative Law Judge ("ALJ").  Following

the hearing, the ALJ also denied the claim.  The Appeals Council rejected a subsequent

request for review.  The ALJ's decision consequently became the final decision of the

Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131

(11th Cir. 1986).  The case is now before the court for review pursuant to 42 U.S.C. §§ 405

(g) and 1631(c)(3).  The parties have consented to the United States Magistrate Judge

conducting all proceedings in this case and ordering the entry of final judgment, pursuant to

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1)     Is the person presently unemployed?
> (2)     Is the person's impairment severe?
> (3)     Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)     Is the person unable to perform his or her former occupation?
> (5)     Is the person unable to perform any other work within the economy?

> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  The Issues

**A. Introduction**.  The plaintiff was 58 years old on the date of onset (R. 54) and 60 years old at the time of the hearing before the ALJ.  (R. 212).  Williams testified that she completed her schooling in Germany and has some textiles training.  (R. 220).  The plaintiff's prior work experience includes work as a waitress/banquet server.  (R. 23). Following the hearing, the ALJ concluded that the plaintiff has severe impairments of "lumbar degenerative disc disease, spinal stenosis, mild osteoarthropathy of hips, and

3

hypertension." (R. 21). The ALJ concluded that the plaintiff was able to return to her past relevant work as a waitress/banquet server as this job is performed in the national economy. (R. 23). Consequently, the ALJ concluded that the plaintiff was not disabled. (R. 23-24).

**B. Plaintiff's Claims**. As stated by the plaintiff, she presents the following three issues[4] for the Court's review:

1.      The administrative law judge erred in his evaluation of medical source opinion, particularly the opinion of Consultative Examiner Ellis. (Pl's Br. at 9).

2.      The administrative law judge failed to provide any analysis of Ms. William's testimony or credibility. (Pl's Br. at 11).

3.      At minimum, remand under Sentence 6 of 42 U.S.C. § 405(g) is required. (Pl's Br. at 13).

## IV. Discussion

A disability claimant bears the initial burden of demonstrating an inability to return to her past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and his family or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983).

---

[4] Although the plaintiff presents three questions in her "Statement of the Issues," the court considers the issues as presented in the body of the plaintiff's brief as these issues are discussed in detail in brief.

**1.   The administrative law judge erred in his evaluation of medical source opinion, particularly the opinion of Consultative Examiner Ellis**.  (Pl's Br. at 9).  The plaintiff contends that the ALJ improperly credited the state agency's non-examining physician's opinion while rejecting the consultative examiner's opinion that regarding Williams' physical limitations.  (*Id*.).  Williams asserts that she is disabled due to pain in her hip and lower extremities.  Consequently, she contends that her ability to walk and stand are limited and that she must sit to alleviate her pain.

In November 1997, Williams presented to Dr. Steven Beranek of Wiregrass Orthopaedics complaining of "right buttock and leg pain."  (R. 115).  An examination revealed "full forward flexion and rotational and lateral bending of the lumbar spine."  (*Id*.)  Although she had some "minimal back tenderness," Dr. Beranek noted "no muscle spasm."  (*Id*.)  He noted "pain in the right buttock over the piriformis muscle which is aggravated with internal rotation of the hip."  (*Id*.)  Dr. Beranek diagnosed Williams with "[r]ight sided sciatica with piriformis syndrome."   (*Id*.)   He prescribed rehabilitative therapy and medication.[5]  (*Id*.)

On December 31, 1997, Williams returned to Dr. Beranek.  (R. 114).  At that time, she was doing stretching exercises and heat treatments.  (*Id*.)  "[S]he has noted excellent improvement."  (*Id*.)  Dr. Berenak's examination revealed the following:

> Examination reveals forward flexion to the ankles.  She has persistent pain in
> the buttock with straight leg raise testing on the right past 70 degrees and

---

[5]  Dr. Beranek's treatment note does not name the medication.

tightness in the piriformis area with internal rotation of the right hip.  She is otherwise neurologically intact.

(*Id*.)  Dr. Beranak continued her treatment and prescribed Robaxin.  (*Id*.)

On January 24, 2002, Williams was seen by Dr. James Dehaven at Southern Bone & Joint Specialists.  (R. 108).  At that time, she complained of arm pain, neck pain, and pain in her upper extremities.  (*Id*.)  The physical examination revealed "full ROM of the neck, shoulders and upper extremities."  (*Id*.)  Dr. Dehaven diagnosed neck pain, "radicular in nature."  (*Id*.)  He prescribed Lorcet at night and Medrol Dosepak.  (*Id*.)

On June 1, 2004, Williams was seen at the Fort Rucker Army Hospital, complaining of low back pain.  She was diagnosed with radicular pain, low back, and given an injection of Decadron.  (R. 128).  She was also prescribed Celebrex.  (*Id*.).  On June 4, 2004, She was diagnosed with radicular pain and given another injection.  (R. 127)  On June 8, 2004, she was prescribed Motrin 800 mg.  (*Id*.).

On July 12, 2004, Williams returned to Southern Bone & Joint Specialists and was seen by Dr. Bonnie Dungan.  (R. 106).  At that time, she complained of back pain.  (*Id*.)  Dr. Dungan diagnosed "[r]adicular type symptoms with known degenerative disc disease of the back and acute back strain."  (*Id*.)  Dr. Dungan questioned Williams' compliance but prescribed Celebrex and physical therapy.  (*Id*.)  She specifically did not prescribe pain medication.  (*Id*.)

On September 1, 2004, Williams presented to Dr. Paul Maddox of Southern Bone & Joint Specialists complaining of "right sided low back pain and right leg pain."  (R. 105).

She provided Dr. Maddox with a CT scan, a MRI, and x-rays of her back.  (*Id*.).  Dr. Maddox

noted that Williams had "some SI pain, some supra bursal pain over the ipsilateral right hip

and some symptoms compatible with spinal stenosis."  (R. 104).

> She has some mild facet enlargement at the 4-5 level is really all we see.  I've
> reassured her about this and I don't know that she's capable of dish/tray busing
> that she has done over the years at Ft. Rucker Officer's Club.  Some of these
> trays weigh as much as 70 pounds and I understand she has to go up stairs with
> them.  Probably a job that is not quite as lumbar intensive would be good.  I'd
> like to see her go through a lumbar stabilization foraminal opening postural
> program for her back with a therapist, stop the anti-inflammatories as I think
> that's what's giving her the stomach cramping and we'll be happy to follow
> up here if her symptoms are not responding.  An epidural may be of some help
> and trigger injections may be of some help but neither have made a great deal
> of difference of late.  I don't see this as a surgical problem if she can adjust her
> lifestyle some.

(*Id*.).

Williams presented to Dr. Beranek complaining of back pain on October 27, 2004.

(R. 109).  At that time, an examination of her spine revealed the following:

> fairly good flexion, extension, and rotational and lateral bending.  There is
> some tenderness on palpation with some minimal muscle spasm.  Straight leg
> raise testing is negative, and she has some minimal pain with internal rotation
> of the hips bilaterally, worse on the right.

(*Id*.).  Dr. Beranek reviewed an MRI and CT of her spine and advised Williams that "she

should just live with this as best as possible and control her pain through modified activity

and medication."  (*Id*.)

In 1997, x-rays demonstrated "[d]egenerative changes of the hips, consistent with

osteoarthropathy [and] L5-S1 intervertebral disc space narrowing and facet sclerosis."  (R.

158).  A CT scan of her lumbar spine in June 2004 revealed "mild bilateral foraminal

narrowing canal at L5-S1."  (R. 152).  Hip x-rays revealed

> osteophytes off of the bilateral femoral heads inferiorly.  Enthesophytes are
> seen off of the greater trochanter.  Phleboliths are seen in the hemipelvis.  Joint
> spaces are preserved.  . . . Mild degenerative change of the bilateral hips.

(R. 154).

On July 20, 2005, Williams presented to Dr. Mark Ellis for a consultative

examination.  (R. 185).  Dr. Ellis conducted a thorough examination of Williams.

> DORSOLUMBAR SPINE:  No kyphosis of scoliosis noted.  The patient does
> indicate some discomfort with palpation down the lower spine and also over
> the right buttock area over the right sciatic notch.  She indicates that this area
> is tender to palpation.  She does have decreased range of motion secondary to
> pain in this area.  She also has pain in this area of the back when we do muscle
> strength testing of the lower extremities, more on the right than on the left. She
> also has pain in this area when we do a seated straight leg raise on the right as
> well as supine and elevating the right leg approximately 45 degrees.  No step
> or depression over the spinous process.  Range of motion of the dorsolumbar
> spine as noted on the attached sheets.

> LOWER EXTREMITIES:   There is no crepitance, swelling, redness or
> increased warmth of any joints.  Range of motion of the joints of the lower
> extremities is as noted on the attached sheets.  No varicosities noted on the
> lower extremities.  Claimant walks with a normal gait, does not use any type
> of hand-held device.  There is no atrophy, deformity, or wastage of the lower
> extremities.   Muscle strength is 5/5 bilaterally when tested in the quads,
> hamstrings, calf muscles, and the muscles of the foot in dorsiflexion and
> plantar flexion.  Claimant has a burning sensation on the inner aspect of the
> right lower leg above the medial malleolus.  She complains of intermittently
> having this burning in both feet diffusely, but none at the moment.  DTR's are
> 2+ bilaterally at the patellar and patient is able to walk on her toes and heels,
> but she has a lot of difficulty squatting.  She has difficulty getting back up due
> to the problems as mentioned with the back.

> X-RAYS:  . . . X-rays were also obtained of the lumbosacral spine.  These are
> AP & lateral views.  These were weight bearing views.  On these, I see no
> decrease in the vertebral body height nor in the vertebral disc height.  She
> appears to have good alignment.  No foreign bodies.  No abnormalities noted

on the plain film x-rays of the lumbosacral spine.

X-rays were also obtained of the left and right hips.  These were weight bearing views.  On these, I do not see any fractures, any dislocations.  She appears to have a little bit of possibly arthritic changes and spurring noted along the femur.  These does not extend into the joint space.  No foreign bodies and no other abnormalities noted on plain film x-rays of the left and right hip.

(R. 187-88).  Dr. Ellis opined that

this patient has problems with spinal stenosis. This diagnosis was made by Dr. Beranek an orthopedic surgeon.  Also, notes indicate that the patient has some degenerative disc disease that appears to have been identified on the MRI as well as radiculopathy.  The records also indicate that the patient has had problems with sciatica in the past, tendonitis in the past from where she had surgery and also epicondylitis.  Today, the patient indicates that she is having some pain.  She indicates that this is improved since she has not been doing work.  The type of work that she had been doing, lifting up to 70 pounds, would cause her to have worse pain.  We have completed a medical source opinion based largely on information provided largely by the patient. She gave excellent effort during the examination today. This is a very pleasant lady who was obviously in pain while doing some of the muscle strength testing in her legs.  Despite this, she did not complain. . . . Overall, it does appear that this unfortunate lady has some problems with her back and despite obvious pain today when we were doing some of the maneuvers, she gave excellent effort. She was not using any type of cane or assistance device today.

(R. 189)

Dr. Ellis completed a medical source opinion form in which he indicated that the plaintiff could walk and stand for 20 - 30 minutes at a time for a total of 4 hours per day.  He also indicated that she had no limitation sitting.  (R. 190).  The state agency non-examining physician determined that Williams could sit, stand or walk "with normal breaks" for "about 6 hours in an 8-hour workday."  (R. 162)

The ALJ accorded more weight to the opinion of the non-examining physician than

9

to Dr. Ellis, the consultative physician, because Dr. Ellis's conclusions were "based primarily on the claimant's subjective complaints."[6]   (R. 23).   Dr. Ellis clearly indicated that he "completed this form based primarily on the claimant's subjective complaints."  (R. 192). Williams argues that the opinion of a non-examining physician is entitled to little weight and that "Dr. Ellis' opinion is more reliable" than the non-examining physician.  (Pl's Br. at 10). The ALJ found that the plaintiff possessed the ability to perform a range of light work with some restrictions including sitting and standing/walking for 6 hours a day, basing this determination on the non-examining consultant's RFC rather than Dr. Ellis' report.  (R. 22). Taken alone, the opinion of a non-examining reviewing physician does not constitute substantial evidence to support an administrative decision.  *Swindle v. Sullivan*, 914 F.2d 222, 226 n. 3 (11th Cir. 1990).  However, an ALJ does not err in relying on the opinion of the non-examining physician when that opinion does not contradict an examining physician's opinion.  *Edwards v. Sullivan*, 937 F.2d 580, 584-585 (11th Cir. 1991).   The evidence in the record supports the ALJ's findings regarding the plaintiff's residual functional capacity.  Although Dr. Ellis opined that the plaintiff could sit/stand for 4 hours, the non-examining consultant opined that Williams could sit/stand for 6 hours.  The non-examining physician's opinion does not contradict Dr. Ellis' opinion.  More importantly, however, a review of the ALJ's decision demonstrates that the ALJ conducted a thorough analysis of the testimony and considered all of the objective medical evidence in reaching

---

[6]  The ALJ viewed Dr. Ellis' conclusions "with caution."  (R.. 23).

his decision.

The plaintiff argues that the non-examining physician did not consider whether she needed to take breaks and that this is critical to determining whether she could perform her past relevant work.  She is entitled to no relief on this basis.  A claimant bears the burden of proving that she can no longer perform her past relevant work.  If a claimant can do the kind of work she has done in the past, she is not disabled.

> The regulations require that a claimant not be able to perform [her] past *kind* of work, not that [s]he merely be unable to perform a specific job [s]he held in the past.  20 C.F.R. §§ 404.1520(e), 416.920(e) 1986).  "A claimant makes a prima facie showing of disability only by establishing 'that he is unable to return to his former *type* of work.'"  *Pelletier v. Secretary of HEW*, 525 F.2d 158, 160 (1st Cir. 1975) (emphasis in First Circuit opinion) (citations omitted).  A claimant has to "show an inability to return to her previous work (i.e. occupation), and not simply to her specific prior job."  *DeLoatche v. Heckler*, 715 F.2d 148, 151 (4th Cir. 1983.  *See also Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981).

*Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986).

The plaintiff has failed to meet her burden in this regard.  At the administrative hearing, the vocational expert testified that Williams' past relevant work "would be best classified as a banquet waitress which would be DOT code 311.477-026.  That's classified by the *Dictionary of Occupational Titles* as being light in the exertional level . . ." (R. 228).  The ALJ's reliance on the DOT is strictly within the discretion of the ALJ.  *See Jones v. Apfel*, 190 F.3d 1224, 1230 (11th Cir. 1999).

This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards.  *Bridges v. Bowen*, 815

F.2d 622 (11th Cir. 1987).  After carefully considering the evidence of record, including those portions potentially conflicting with or detracting from the Commissioner's decision, the court concludes that the Commissioner's decision is due to be affirmed.

2.  **The administrative law judge failed to provide any analysis of Ms. William's testimony or credibility**.  (Pl's Br. at 11).  "Subjective pain testimony supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the plaintiff complains is *itself* sufficient to sustain a finding of disability."  *Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987).  The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms.  *Landry,* 782 F.2d at 1553; *see also Holt*, 921 F.2d at 1223.  This standard requires evidence of an underlying medical condition *and either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) an objectively determined medical condition of such severity that it can reasonably be expected to give rise to the alleged pain.  *Landry,* 782 F. 2d at 1553.  In this circuit, the law is clear.  The Commissioner must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain.  *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry*, 782 F.2d at 1553.  Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, the Commissioner has accepted the testimony as true as a matter of law.  This standard requires that the articulated reasons must be supported by

substantial reasons.  If there is no such support then the testimony must be accepted as true. *Hale*, 831 F.2d at 1012.

According to Williams, her pain is such that she cannot lift banquet trays, and consequently, she cannot work.  (R. 229).  As explained more fully below, the ALJ did not fully credit this testimony.  Williams argues that the ALJ failed to properly apply the law of this circuit to discredit his pain testimony.

At the administrative hearing, the plaintiff testified that she has pain in her right leg, down her sciatic nerve, and in her hip.  (R. 212).  She further testified that she is on Percocet but she only takes it at night as it makes her "very, very drowsy."  (R. 213).  She has been prescribed Lorcet but she testified that she does not take her pain medication because she's "scared [she'll] get hooked on it."  (R. 224).  She testified that she "kind of loung[es] around" during the day; she can't vacuum and she does "very, very little dusting.  (R. 214).  She can do a little cooking and wash some dishes.  (*Id*.)  She can drive herself places when her husband can't drive her and she can go to the grocery store.  (R. 214, 219).  She does not have a handicapped parking sticker for the car.  (R. 215).  She does not a cane or a wheelchair. but when she begins to hurt, she sits down.  (R. 215-16).

The ALJ discredited the plaintiff's testimony of disabling pain and functional restrictions.  (R. 22).

> After considering the evidence of the record, *the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms,* but that the *claimant's statements concerning the intensity duration and limiting effects of these symptoms are not confirmed by credible medical findings based on medically acceptable*

13

> *clinical or laboratory diagnostic techniques*.

(R. 22) (emphasis in original).

If this were the extent of the ALJ's credibility, the plaintiff might be correct.

However, the ALJ continued his analysis.

> Diagnostic imaging studies have revealed only mild abnormalities not reasonably anticipated to result in the disabling degree of pain and functional limitation alleged by the claimant. (4F at 30, 32). Physical exam findings are similarly unconvincing. Dr. Beranek noted minimal pain and spasm, some tenderness, and negative straight leg raise (2F at 1). Dr. Maddox observed negative straight leg raise, comfortable hip mobility, and no acute distress. (1F at 2). Dr. Ellis reported that the claimant walked normally and exhibited no acute distress (7F). Dr. William Sawyer's records contain no evidence of dizziness, blurred vision, or medication side effects to corroborate the claimant's allegations regarding these symptoms
>
> Moreover, no treating or examining physician has opined that the claimant is disabled. The claimant's treating physicians have recommended only conservation treatment and lifestyle modification. The claimant has never been hospitalized or sought emergency medical treatment for pain. She drives, cooks, dusts, washes dishes, and does laundry. (7F at 1). She declined stronger pain medication because she does not want to "be drugged up" (7F at 1). These factors weigh heavily against the claimant's subjective allegations of disabling pain.
>
> As for the opinion evidence, Dr. Ellis' conclusions as to the claimant's physical limitations must be viewed with caution as they are based primarily on the claimant's subjective complaints (7F at 8). No other treating or examining physician has reported disabling limitations or opined that the claimant is disabled.
>
> Thus, the objective medical evidence, as a whole, the claimant's daily activities, the opinion evidence of the state agency consultant, and the treatment advice of the claimant's physicians all support a finding that she retains the residual functional capacity for a range of light work.

(R. 22-23).

The ALJ has discretion to discredit a plaintiff's subjective complaints as long as he provides "explicit and adequate reasons for his decision." *Holt,* 921 F.2d at 1223. The ALJ's reasons for discrediting the plaintiff's testimony of pain and disability were both clearly articulated and supported by substantial evidence. *Id.* Relying on the treatment records, objective evidence, and Williams' own testimony, the ALJ concluded that the plaintiff's allegations regarding the extent of her pain were not credible and discounted that testimony. After a careful review of the record, the court concludes that the ALJ properly discounted the plaintiff's testimony and substantial evidence supports the ALJ's credibility determination. It is undisputed that the plaintiff suffers from pain. The ALJ considered that the plaintiff's underlying condition is capable of giving rise to some pain and other limitations, but he concluded that the plaintiff's underlying impairments are not so severe as to give rise to the disabling intractable pain as alleged by the plaintiff.

To the extent that the plaintiff argues that the ALJ should have accepted her testimony about her pain, as the court has explained, the ALJ had good cause to discount her testimony. This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards. *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

**3. At minimum, remand under Sentence 6 of 42 U.S.C. § 405(g) is required**. (Pl's Br. at 13). The sole remaining issue is whether this matter should be remanded to Commissioner under 42 U.S.C. § 405(g) for consideration of new evidence presented by the plaintiff to this court on May 4, 2001. New evidence presented to the Appeals Council, but

not to the ALJ, may be considered by the court to determine whether remand is proper under 42 U.S.C. § 405(g).  Section 405(g), in part, permits courts to remand a case to the Social Security Administration for consideration of new evidence under certain circumstances.  In order to prevail on a claim for remand under § 405(g) a claimant must show that (1) there is new, non-cumulative evidence; ( 2) the evidence is material, that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative hearing.  *See Vega v. Comm'r of Social Sec.,* 265 F.3d 1214, 1218 (11th Cir. 2001); *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998); *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987).

In this case, the plaintiff argues that medical records including an April 3, 2006, MRI from her treating physician Dr. Vanderzyl, spanning from March 20, 2006 until April 17, 2006, which were submitted to the Appeals Council but not to the ALJ, constitute new evidence warranting remand.  Applying the three-prong remand standard, the evidence is new because it was not before the ALJ.  The ALJ held an administrative hearing in this case on November 8, 2005.  (R. 208).  The  ALJ rendered his decision in this case on February 23, 2006.  (R. 24).  Thus, the evidence is new because it was not before the ALJ nor available at the time of the hearing.  In addition, the evidence is not cumulative because the MRI demonstrates a change in the plaintiff's condition, "L4-5 Moderate Generalized Canal and Bilateral Neural Foraminal Stension due to chronic disc and joint disease . . .  [and] L3-4 Mild Canal and Neural Foraminal Stenosis." (R. 198).  Thus, the court concludes that the evidence meets the first prong of the standard because it was new and non-cumulative.

16

However, the court must conclude that the medical records are not material.  Although the plaintiff continued to complain about pain over "her sacroiliac joint," she had "full active range of motion in the hips, knees, ankles, and forefeet all without pain, tenderness or deformity."  (R. 195).   Results of x-rays indicate "inflammatory changes . .. no significant disc disease."  (*Id.*)

> She has some mild early spinal stenosis, but nothing to cause her level of pain that she has in her right SI joint. . . . She has no pain or tenderness about her pyriformis fossa. . . Her EMG shows a 4-5 nerve on the right side consistent with her pain even though she claims it goes on to the S-1 distribution. Nothing significant on her MRI.  Her sacroiliac injection did give her significant relief of her discomfort, but I think it's just the steroid working. We talked about epidurals.  She said she is not ready for one at the current time.  She has a pain radiating from her neck into the right biceps.  It is getting progressively worse.  She has had it on and off for years.  She has full active range of motion of her fingers, wrists, elbow and shoulder girdle.  There is no localized pain.  Negative Yergason's sign.  No signs of a bicep rupture or shoulder bursitis.  I think it is purely her neck.  She actually had a negative Yergason's sign so it is not clear what's going on.  PLAN:  We are going to put her on some Lyrica 75 B.I.D. for a week.
>
> 4/17/06 - Wiltrud comes back in.  The pain is now localized.  It is not in her SI joint any more.  It is over the pyriformis fossa. . . We are going to bump her from Lyrica 75 B.I.D. to 150 B.I.D.  She got relief from the majority of her discomfort except in her right forearm and her right leg.

(R. 195-96).

Williams's complaints to Dr. Vanderzyl are similar to her complaints to Drs. Beranek, Maddox, Dungan, Dehaven and Ellis.  The results of the x-rays, MRIs, CT scan and EMG all demonstrate some mild to moderate canal narrowing and radiculopathy but none of her physicians have opined that Williams is disabled.  Moreover, Williams' retains "full active range of motion in the hips, knees, ankles, and forefeet all without pain, tenderness or

deformity." (R. 195). Finally, Dr. Vanderzyl treated Williams conservatively like her previous doctors. The court concludes that the plaintiff has failed to demonstrate that there is a reasonable possibility that the new evidence would change the administrative result. Thus, the evidence is not material. The evidence simply does not satisfy all three requisite criteria for remand under § 405(g) and therefore, remand is not proper.

Finally, because the evidence was not before the ALJ, the evidence is irrelevant to the court's determination of whether the ALJ's decision was supported by substantial evidence. Because the court reviews "the decision of the ALJ as to whether the claimant was entitled to benefits during a specific period of time, which period was necessarily prior to the date of the ALJ's decision," *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999), Dr. Vanderzyl's report is simply not relevant or probative of whether substantial evidence supports the ALJ's decision that the plaintiff was not disabled from June 1, 2004 until the date of the administrative decision.

## V. Conclusion

The court has carefully and independently reviewed the record, and concludes that the decision of the Commissioner is supported by substantial evidence. The court will enter a final judgment affirming the Commissioner's decision.

Done this 30th day of July, 2007.

_____/s/Charles S. Coody_____
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE

18